UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ALREE B. SWEAT, III,

                Petitioner,

v.                                                                                     Cv. No. 19-987 JB/GJF

ATTORNEY GENERAL for the
STATE of NEW MEXICO,

                Respondent.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court[1] on Petitioner's *pro se* "PETITION Under 28 U.S.C. 2254 for a Writ of Habeas Corpus" ("Petition") [ECF 1], Respondent's answer [ECF 19], and Petitioner's reply. [ECF 21]. Having carefully reviewed the briefing, the voluminous record, and being fully advised, this Court recommends the Petition be **DENIED** for the reasons that follow.

**I.    PROCEDURAL BACKGROUND**

Petitioner is currently serving an 11-year term of imprisonment in the custody of the New Mexico Corrections Department. *See State v. Alree Bernie Sweat*, No. D-307-CR-201300452; ECF 19-1, Ex. L. His prison sentence stems from a trial in August 2014 at which a jury found Petitioner guilty of four counts of burglary of a vehicle in connection with automobile break-ins occurring in the parking lots of two Las Cruces hotels. ECF 19-1, Ex. H; *see also* ECF 19-1, Ex. A.

Petitioner timely appealed his conviction, arguing that (1) the district court erroneously

---

[1] U.S. District Judge James Browning referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF 4. This Court has concluded that no evidentiary hearing is required or permitted. *See* 28 U.S.C. § 2254(e)(2).

1

admitted into evidence "grainy" video surveillance from the Super 8, and testimony from Las Cruces Police Department Detective Michael Rickards identifying Petitioner as the individual shown in the footage; (2) the evidence was insufficient to support the convictions; and (3) he was denied his constitutional right to a speedy trial. ECF 19-1, Ex. V; ECF 19-1, Ex. N.

The New Mexico Court of Appeals affirmed the conviction. The court held that the surveillance footage was relevant and not unfairly prejudicial. The court further reasoned that Detective Rickards, being familiar with Petitioner from previous encounters, could identify Petitioner as the person in the video. The court also concluded that sufficient evidence supported all four convictions since, among other things, a second responding police officer, Daniel Lazos, observed Petitioner banging on a door parked in the Comfort Inn lot; heard glass break; and saw Petitioner move to a second car. Finally, the appellate court did not address Petitioner's speedy trial argument because he "did not invoke a ruling on the issue in the district court." ECF 19-1, Ex. Y at 0224.

The New Mexico Supreme Court denied Petitioner's request for discretionary review. ECF 19-1, Exs. Z, AA. Petitioner then filed a *pro se* state habeas petition, subsequently supplemented with court-ordered additional factual information, see ECF 19-1, Exs. CC, FF, GG, alleging multiple instances of ineffective assistance of counsel. *See generally* ECF 19-1, Exs. CC, GG. He also argued that the State committed *Brady* violations by not disclosing a cell phone that was recovered from his car and a yellow pry bar that was discovered during a search of his home. ECF 19-1, Ex. CC at 0244, 0256. He also noted the Court of Appeals' refusal to address his speedy trial argument. *Id.* at 0244.

After the State filed its response, *see* ECF 19-1, Ex. LL, the state habeas court, which presided over Petitioner's jury trial, denied the petition "on the ground[] that [Petitioner] did not

2

meet his burden of proof." ECF 19-1, Ex. MM at 0729.  Petitioner sought review by the New Mexico Supreme Court. The State responded by arguing, among other things, that neither the pry bar nor cell phone were exculpatory or used in the State's case. ECF 19-2, Ex. LL. The State also addressed Petitioner's ineffective assistance arguments. *Id*. The New Mexico Supreme Court denied Petitioner's petition for writ of certiorari.  ECF 19-1, Exs. NN–SS.

Petitioner timely filed his 28 U.S.C. § 2254 petition.  ECF 1.  In this Court, Petitioner repeats his *Brady* (Ground One), ineffective assistance (Ground Two), and speedy trial arguments (Ground Three). ECF 1 at 9, 13, 15, 31-49.

## II.      FACTUAL BACKGROUND

Pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA), the Court presumes the factual findings of the New Mexico Court of Appeals (NMCA) are correct. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007). On direct appeal, the NMCA summarized the facts as follows:

> On the morning of May 5, 2013, Las Cruces Police Department (LCPD) Officer Sean Terry was dispatched to investigate a reported auto burglary at the Super 8 Motel. He was, however, rerouted by dispatch to the Mesilla Valley Hospital because the complainant had left the motel to go to work. He observed that the window of Theresa Graham's white Buick LeSabre (the LeSabre) was pried open and broken. Graham reported that additional evidence was located at the Super 8 Motel. Officer Terry proceeded to the Super 8 Motel, where he discovered a blue Toyota Sienna (the Sienna) with similar damage. Officer Terry photographed the damage to both vehicles. He also viewed surveillance video footage with the manager of the motel and requested a copy of the surveillance video footage from the relevant time period (the surveillance video).
>
> On May 6, 2013, LCPD Detective Michael Rickards received an email message that contained still images captured from the surveillance video. Detective Rickards recognized Defendant as the person pictured. Detective Rickards then viewed the surveillance video and noted that the person pictured was driving a dark-colored pickup truck. With this information, Detective Rickards began an investigation to determine whether Defendant owned or drove such a vehicle. As Detective Rickards was driving to Defendant's last known address, he saw Defendant standing

3

on the side of the road next to a disabled, dark-colored pickup truck. Detective Rickards obtained the registration information and determined that Defendant owned the vehicle.

Given this information, Detective Rickards implemented a surveillance operation targeting Defendant. Officers stationed themselves at Defendant's house and observed that location until approximately 1:00 a.m., at which time Defendant left his house in a white Ford Mustang (the Mustang). Defendant drove through the city, ultimately parking at the Comfort Inn. New Mexico State Police Officer Daniel Lazos was assisting with the operation and positioned himself on the north side of the Comfort Inn. He saw Defendant in the northwest part of the parking lot banging on the door frame of a car. Officer Lazos then heard glass breaking, saw Defendant move to another vehicle, and heard more glass breaking. At this time, LCPD Officer Gary Pederson drove into the parking lot and parked his vehicle in close proximity to Defendant. Officer Pederson exited his vehicle and confronted Defendant, who dropped a backpack and fled on foot. Defendant ran directly toward Officer Lazos, but a rock wall separated the two. Defendant spoke to Officer Lazos as he ran by. While running away from Officer Lazos, Defendant passed directly in front of Detective Rickards' vehicle. Detective Rickards identified Defendant and yelled out for Defendant to stop running. The officers searched the area but did not find Defendant.

Crime Scene Photographer and Technician Anthony Martin photographed damage to two vehicles at the Comfort Inn: a silver Toyota Prius (the Prius) and a grey Ford F-250 (the F-250). The Mustang remained at the Comfort Inn.

After being apprehended, Defendant participated in a custodial interview with Detective Rickards, during which they discussed the current location of property missing from the vehicles at the Super 8 Motel. Defendant denied having possession of the property and stated that "I don't remember what I got [from the Super 8 Motel]" and that "Bobby did something with it[.]"

At trial, the State introduced the surveillance video through the testimony of Super 8 Motel manager Dipesh Gandhi. Gandhi testified that the surveillance video showed activity in the Super 8 Motel parking lot, including the "breaking of the vehicles" at issue in the case. Defendant objected to the admission of the surveillance video, claiming that, because it was "black-and-white" and "grainy," the prejudicial effect outweighed the probative value. The district court overruled the objection.

Numerous law enforcement officers testified about their specific involvement in the investigation or the surveillance operation targeting Defendant. During Detective Rickards' testimony, the State played the surveillance video for the jury, including segments that showed (1) a dark-colored pickup truck pulling into and parking in the Super 8 Motel parking lot; (2) a person peering into the passenger side window of a white vehicle with a flashlight; and (3) a person forcibly entering

the LeSabre and the Sienna. As the jury viewed the second segment, the following exchange took place:

[The State:] I'm going to draw your attention to [the portion of the surveillance video] starting with 2:20 [a.m.] . . . . Can you tell from that angle, or did you know who this [person pictured] was?

[Detective Rickards:] Not at this particular moment, no.

[The State:] Okay. Is this part of the video that you watched?

[Detective Rickards:] Yes, it is.

[The State:] When did you start to realize who you thought it was?

[Detective Rickards:] As soon as he came from the passenger side window to this position, I knew immediately it was [Defendant].

Detective Rickards' testimony on this topic continued as follows:

[The State:] Do you know [Defendant]?

[Detective Rickards:] I do.

[The State:] Does he know you?

[Detective Rickards:] Yes, he does.

[The State:] Does he know you by name?

[Detective Rickards:] Yes, sir, he does.

[The State:] And you knew him before this incident by name?

[Detective Rickards:] Yes, I d[id].

[The State:] So the person you identified on the video, to you, how certain were you that that was [Defendant]?

[Detective Rickards:] I was certain.

[The State:] How certain?

[Detective Rickards:] 100 percent.

Defendant did not object to either line of questioning. Detective Rickards also

5

testified that Defendant's physical appearance had changed substantially during the intervening year since the incident, stating specifically that Defendant "was much thinner back then."

The owner of the Sienna, Michael Henderson, and the driver of the F-250, Sheridan Hankins, testified that they did not authorize any person to enter the vehicles. The owner of the LeSabre, Graham, and the owner of the Prius, Jay Warren, did not testify.

Defendant moved for a directed verdict on two of the burglary of a vehicle charges at the close of the State's case, arguing that the State had failed to prove that entries into the LeSabre and the Prius were unauthorized. The district court denied this motion. Defendant was convicted on all four charges. This appeal resulted.

*New Mexico v. Sweat*, 2017-NMCA-069, ¶¶ 3-11, 404 P.3d 20, 22–24.

### III.   CLAIMS PRESENTED

Petitioner asserts three grounds for habeas relief:

1. The State violated *Brady v. Maryland* by not disclosing exculpatory evidence in the form of a cell phone found in his car and a pry bar recovered from his home. ECF 1 at 6.

2. Petitioner's trial counsel was constitutionally ineffective for several reasons, including multiple arguments previously raised in state habeas proceedings along with an argument that counsel "fail[ed] to instruct the court that a mandatory jury instruction must be given when evidence has been admitted concerning a statement allegedly made by a defendant[.]" ECF 1 at 8.

3. Speedy trial arguments. ECF 1 at 9.

### IV.   APPLICABLE LAW[2]

The "AEDPA requires that [courts] apply a difficult to meet and highly deferential standard

---

[2] In this section, the Court sets forth the Congressionally-mandated legal standard for federal review of state criminal convictions, as that standard has been interpreted by the Supreme Court and Tenth Circuit. The Court will include in its individual analysis of Petitioner's claims the substantive legal standard that governs each of those claims.

in federal habeas proceedings under 28 U.S.C. § 2254; it is one that demands that state-court decisions be given the benefit of the doubt." *Simpson v. Carpenter*, 912 F.3d 542, 562 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (internal quotation marks omitted). "[T]he standard of review applicable to a particular claim depends upon how that claim was resolved by the state courts." *Cole v. Trammel*, 735 F.3d 1194, 1199 (10th Cir. 2013), *superseded after rehearing by* 755 F.3d 1142, 1146 (10th Cir. 2014). "When a petitioner includes in his habeas application a 'claim that was adjudicated on the merits in State court proceedings,' a federal court shall not grant relief on that claim unless the state-court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Simpson*, 912 F.3d at 562 (quoting 28 U.S.C. § 2254(d)(1)–(2)).

To determine "whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotations and citations omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* at 1192. Review becomes more difficult, however, when a state court fails to accompany its decision with a reasoned opinion. In such an instance, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a

relevant rationale." *Id*.

Once a federal habeas court locates the relevant rationale, it then can determine whether the decision was contrary to or an unreasonable application of Supreme Court law. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). This does not require the state court to cite applicable Supreme Court precedent or even demonstrate an "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradict them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Courts apply this objective unreasonableness inquiry "in view of the specificity of the governing rule: 'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Simpson*, 912 F.3d at 563 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If, however, "a legal rule is specific, the range may be narrow"; thus, "[a]pplications of the rule may be plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. It is also important to note that "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; instead "that application must also be unreasonable." *Id*. at 411.

8

## V.     ANALYSIS

### A.     Exhaustion of "Mixed" Petitions

Respondent contends that Petitioner did not exhaust all of his ineffective assistance of counsel claims in state court. For example, Respondent insists that Petitioner failed to argue "a mandatory jury instruction must be given when evidence has been admitted concerning a statement allegedly made by a defendant." ECF 19 at 9 (quoting ECF 1 at 45). Nonetheless, Respondent asks the Court to ignore the exhaustion requirement and deny the petition on the merits. *Id*.

"A state prisoner generally may not raise a claim for federal habeas corpus relief unless he 'has exhausted the remedies available in the courts of the State.'" *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires that a state prisoner pursue his claims "through 'one complete round of the State's established appellate review process,' giving the state courts a 'full and fair opportunity' to correct alleged constitutional errors." *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In other words, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011) (unpublished) (citing *O'Sullivan*, 526 U.S. at 845; 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 23.3 [b], at 1205–06 (6th ed. 2011) ("[T]he petitioner satisfies her exhaustion burden by raising a claim at all stages of the state's appellate review process (including discretionary state appeals).")).

When an applicant has failed to exhaust, however, and the petition includes a combination of exhausted and unexhausted claims, the petition is described as "mixed" and options available to the federal habeas court include:

>   (a) dismissing the petition in its entirety;
>
>   (b) staying the petition and holding it in abeyance while the applicant returns to state court to raise any unexhausted claim or claims;[3]
>
>   (c) allowing the applicant to dismiss the unexhausted claim or claims and proceed with any claims for which state-court remedies have been exhausted; or
>
>   (d) ignoring the exhaustion requirement altogether and denying the petition for lack of merit.

*See Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citations omitted).

With respect to option (d), the federal habeas court may address the substance of the petition—rather than compel complete exhaustion—if it is convinced that "the applicant does not even raise a colorable federal claim," and therefore interests of comity and federalism are better served by an immediate consideration of the merits. *See Granberry v. Greer*, 481 U.S. 129, 134-135 (1987). Thus, 28 U.S.C. § 2254(b)(2) "allows federal district courts entertaining habeas petitions [that] contain unexhausted claims to address those claims if they can be decided on their merits against the petitioner." *Rudolph v. Galetka*, 2000 WL 293706, *1 (10th Cir. 2000) (unpublished).

Petitioner attempts to refute this exhaustion argument by citing to "Exb. NM at 0732 and point 8 at 0738." ECF 21. In doing so, Petitioner appears to be asserting that this exhibit would support his claim that his counsel was ineffective for failing to request "a mandatory jury instruction [that] must be given when evidence has been admitted concerning a statement allegedly made by a defendant." ECF 21. But Petitioner attached no exhibits either to his Petition or reply brief. Petitioner's citation to "Exb. NM" is most likely a reference to "Exh.

---

[3] Because "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts[,]" *Rhines v. Weber*, 544 U.S. 269, 277 (2005), a federal court should not choose option (b) without first determining that (1) the petitioner had good cause for his failure to exhaust;(2) the unexhausted claims are potentially meritorious; and (3) the petitioner did not engage in intentionally dilatory litigation tactics. *Id*. at 277-278.

NN" from Respondent's brief, which is a copy of his petition for a writ of certiorari from the New Mexico Supreme Court. *See* ECF 19-1, Ex. NN. Indeed, on page 738 of that exhibit, Petitioner makes this precise ineffective assistance argument. The Court does not reach the issue of whether Petitioner has procedurally defaulted on this ineffective assistance of counsel challenge by first raising it on a petition for certiorari to the New Mexico Supreme Court because, on request from Respondent and consistent with *Fairchild v. Workman*, the Court will ignore all exhaustion concerns and will decide Petitioner's ineffective assistance of counsel arguments on the merits.

### B. Procedural Default

Respondent also argues, and the New Mexico Court of Appeals concluded, that Petitioner procedurally defaulted any speedy trial argument by failing to raise it to the state trial court. ECF 19 at 10. Petitioner responds that a statute of limitations defense cannot be waived. ECF 21 at 4.

An important corollary to the exhaustion requirement, the doctrine of procedural default "prevents a federal court from reviewing 'the merits of a claim—including constitutional claims— that a state court declined to hear because the prisoner failed to abide by a state procedural rule.'" *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015) (quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)); *see also Power v. Santistevan*, No. CV 19-1055 KWR/SCY, 2023 WL 3230522, at *4 (D.N.M. May 3, 2023), *R&R adopted*, 2023 WL 4248175 (D.N.M. June 29, 2023). "The state procedural rule at issue must be 'adequate and independent.'" *Casaus v. Hatch*, No. CV 20-1269 WJ/KK, 2023 WL 6805727, at *3 (D.N.M. Oct. 16, 2023) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)). "A state procedural rule is independent if it relies on state law, rather than federal law, and is adequate

11

if it is firmly established and regularly followed." *Id.* (quoting *Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022)) (quotation marks omitted).

Under this doctrine, unless a petitioner can show (1) cause for the default and actual prejudice resulting from the alleged violation of federal law; or (2) that a fundamental miscarriage of justice will occur if the defaulted claims are not considered, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991), "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules.'" *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022).

Petitioner's reply seems to confuse the right to a speedy trial with a statute of limitations defense. *See United States v. Marion*, 404 U.S. 307, 322 (1971) (discussing both the right to a speedy trial and statute of limitations protections for defendants). Regardless, the Court finds that the New Mexico Court of appeals did not make an unreasonable legal determination, or a determination inconsistent with clearly established federal law, when it cited to the New Mexico Supreme Court and held that Petitioner's failure to raise any speedy trial argument before the trial court was dispositive. *See also* Orfield's Criminal Procedure Under the Federal Rules, § 48:24 (2023) (collecting federal cases showing defendants can waive speedy trial right if they do not raise the argument at the trial court). The Court also finds this procedural rule adequate and independent based on the appellate court's analysis. *See State v. Collier*, 2013-NMSC-015, ¶ 41 (declining to consider speedy trial arguments a defendant did not raise in the trial court). Petitioner's statute of limitations arguments do not undercut the adequacy or independence of the state procedural rule, much less demonstrate that the rule was inconsistent with federal law.

Because Petitioner failed to raise his speedy trial argument "consistent with [New Mexico's] Procedural rules," and because he has also not shown either (1) cause for the default

and actual prejudice or (2) that a fundamental miscarriage will occur if the defaulted claims are not considered, his speedy trial argument is procedurally and incurably deficient. *See Coleman*, 501 U.S. at 750; *Shinn*, 596 U.S. at 378. Consequently, the Court is not obliged to – and does not – examine the merits of that claim.

### C. Petitioner's *Brady* Arguments

Petitioner argues the State violated *Brady* by not disclosing the cellphone and its contents discovered at the scene and a pry bar discovered at Petitioner's home. ECF 1. Respondent maintains that, on the *Brady* issue, Petitioner has failed to demonstrate or even argue that any state court engaged in an unreasonable application of law or made an unreasonable finding of fact. ECF 19.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83 (1963). Evidence is "material" within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). *Brady* covers impeachment as well as exculpatory evidence. *United States v. Young*, 45 F.3d 1405, 1408 (10th Cir. 1995).

Petitioner captions his first ground for relief as "*Brady* violation." ECF 1 at 9. But he goes on to narrow his argument by asserting merely that the State's alleged failure to turn over the cell phone found in his car and the pry bar found at his home violated *state procedural rules* on disclosure. *See id.* at 31–35. It is axiomatic that habeas relief does not lie for mere errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions."). Nor does simply captioning an argument a "*Brady* violation" necessarily make it so. *See Gardner v. Runnels*, No. 1:02CV-05523TAGHC, 2005 WL 2405876, at *18 (E.D. Cal. Sept. 28, 2005) ("Merely placing a 'due process' label on an alleged violation does not entitle [the p]etitioner to federal relief.").

More importantly for present purposes is that the state habeas court denied Petitioner's Rule 5-802 petition on the ground that Petitioner "did not meet his burden of proof." ECF 19-1, Ex. MM at 0729. Petitioner offers this Court nothing to show that the state court's determination was in some way contrary to federal law. *See* 28 U.S.C. § 2254(d). Petitioner also raised both of his *Brady* arguments in his second petition for certiorari to the New Mexico Supreme Court. In response to that petition, the State explained that neither the cell phone nor the pry bar were exculpatory or admitted into evidence. ECF 19-2 at 125–132. In light of these filings, the New Mexico Supreme Court denied review to Petitioner a second time. ECF 19-2, Ex. RR.

Petitioner's simple re-assertion of his *Brady* arguments that two state courts previously denied does not demonstrate an unreasonable application of law or finding of fact. Because Petitioner offers no argument showing these state court decisions were contrary to federal law, much less unreasonable, the Court defers to the state court conclusions that he failed to carry his burden of proof regarding any *Brady* violation.

### D.    Ineffective Assistance of Counsel

Petitioner asserts that his counsel was ineffective in numerous ways, including not fully investigating an alibi, failing to successfully suppress evidence, or failing to request specific jury instructions. ECF 1 at 8. Respondent argues that Petitioner has failed to demonstrate prejudice because the State's case was strong based on the evidence the New Mexico Court of Appeals

already ruled was admissible. In addition, Respondent emphasizes that the state courts already denied Petitioner's ineffective assistance arguments and did not unreasonably apply federal law in doing so. ECF 19 at 14-16.

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For federal habeas petitions brought under 28 U.S.C. § 2254(d), *Strickland* is clearly established federal law. *See Williams*, 529 U.S. at 390 ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"). To succeed under *Strickland*, Petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. Courts "may address the performance and prejudice components in any order, but need not address both if [the petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen*, 563 U.S. at 189 (2011) (quoting *Strickland*, 466 U.S. at 690). This requires the petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a jury verdict, the prejudice that a habeas

15

petitioner must establish is that—but for counsel's unreasonable conduct—there is a reasonable possibility that the jury would have had reasonable doubt as to the conviction. *See Weaver v. Massachusetts*, 582 U.S. 286, 303 (2017) ("[H]e has not shown prejudice in the ordinary sense, *i.e.*, a reasonable probability that the jury would not have convicted him . . . .").

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Howell v. Trammell*, 728 F.3d 1202, 1223 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105) (internal citations and quotations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Petitioner already raised multiple ineffective assistance arguments that were denied by the state trial court for not meeting his burden of proof. The New Mexico Supreme Court subsequently denied his petition for certiorari. These state court conclusions were not unreasonable. Petitioner cannot satisfy the prejudice element for any ineffective assistance claim because the evidence at trial established that Detective Rickards, who knew Petitioner from earlier encounters, identified Petitioner as the individual caught on surveillance video footage obtained from the Super 8 motel. Additionally, with respect to the burglaries at the Comfort Inn, the New Mexico Court of Appeals noted that Officer Daniel Lazos, who was positioned in that motel's parking lot, observed Petitioner "banging on the door frame of a car. Officer Lazos then heard glass breaking, saw [Petitioner] move to another vehicle, and heard more glass breaking."

ECF 19-1, Ex. Y at 0205.  Yet a third police officer also confronted Petitioner at the scene.  *Id*.  The evidence of Petitioner's guilt was therefore exceptionally strong.

Moreover, the New Mexico Court of Appeals' determination of these factual issues is presumed correct unless and until Petitioner rebuts that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  He has not done so.  Nor has Petitioner shown why the state courts' determinations of his ineffective assistance claims were unreasonable applications of federal law.  Finally, Petitioner has not made a sufficient showing that any error he complains that his counsel committed actually rose to the level of prejudice under *Strickland*.  For all of these reasons, Petitioner's ineffective assistance claims are not well-taken and should be denied.

## IV.  CONCLUSION

The Court **RECOMMENDS** the Petition be **DENIED**[4] and these proceedings dismissed

---

[4] Petitioner also filed a motion for production, ECF 24, but failed to show how any of the documents he requested would demonstrate entitlement to habeas relief or that the entire state court record before this Court is somehow insufficient to determine whether Petitioner should be entitled to habeas relief. In other words, Petitioner failed to articulate how his very broad request, if granted, would be reasonably likely to result in resolution of this habeas proceeding in his favor. *See Bracy v. Gramley*, 520 U.S. 899, 908–09 (concluding that Rule 6(a) good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief") (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Thus, Petitioner's motion for production, ECF 24, is **DENIED.**

with prejudice. The Court also **RECOMMENDS** that a certificate of appealability be **DENIED**.

/s/ Gregory J. Fouratt
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**